THE STATE OF OHIO, APPELLEE, v.
WINKELMAN, APPELLANT.

(No. 962—Decided August 31, 1981.)

*Mr. George E. Pattison,* prosecuting attorney, and *Mr. Gregory Chapman,* for appellee.

*Mr. Peter J. Strasser,* for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Clermont County.

The facts that give rise to this appeal are relatively uncontested. Defendant-appellant, David E. Winkelman, was indicted in Clermont County on May 16, 1979, on charges of aggravated robbery and felonious assault. Service of the indictments was made on appellant on May 20, 1979, by Detective Cooper of the Clermont County Sheriff's Office.

On July 8, 1979, prior to the trial on the above charges, appellant was stopped by Milford Police Officer Elton Newton after the automobile driven by appellant had slid around a corner and had almost hit the police cruiser. Appellant was alone in the automobile; and, between the bucket seats in appellant's car, the officer saw a .357 magnum pistol. Appellant was arrested for carrying a concealed weapon.

Subsequently, appellant was indicted by the Clermont County Grand Jury on the charge of having a firearm while under disability, in violation of R.C. 2923.13(A)(2). At the trial the jury found appellant guilty as charged; and it is from this verdict that appellant appeals. (The aggravated robbery charge was dismissed by the state prior to the trial on the subject charge. In addition, also prior to trial on the subject charge, appellant was found not guilty, by a jury, of felonious assault.)

Appellant's first assignment of error is:

"The trial court erred to the substantial prejudice of the Defendant-Appellant

in overruling his motion to dismiss made prior to the trial which motion was based, in part, on due process and equal protection arguments and which cited the resolution of the prior indictments in favor of the Defendant as grounds for dismissal."

The appellant argues to this court that, by enacting R.C. 2923.13, the legislature of this state has exceeded its police power, depriving a class of citizens of a substantial civil right guaranteed under Section 4, Article I of the Ohio Constitution and the Second Amendment to the United States Constitution without due process.

R.C. 2923.13 reads, in the part here pertinent, as follows:

"(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

"* * *

"(2) Such person is under indictment for or has been convicted of any felony of violence, or has been adjudged a juvenile delinquent for commission of any such felony[.]"

The statute places those persons who are under indictment for any felony of violence in a classification under which they will be prohibited from acquiring, having, carrying or using any firearm, unless relieved from disability under R.C. 2923.14. Appellant argues that this classification unconstitutionally denies him what he claims to be a fundamental right, that is, the right to bear arms. Appellant also argues that this classification denies equal protection of the law to this class of persons, without a rational basis or without proper due process of law, or both.

We disagree with appellant and find that R.C. 2923.13(A)(2) is constitutional.

It is a well established principle that there is no absolute constitutional right of an individual to possess a firearm, either under the Second Amendment to the United States Constitution or under Section 4, Article I of the Ohio Constitution. *United States* v. *Miller* (1939), 307 U.S. 174; *State* v. *Fant* (1977), 53 Ohio App. 2d 87, 90 [7 O.O.3d 58]. Further, the Ohio Supreme Court has stated:

"* * * The constitution contains no prohibition against the legislature making such police regulations as may be necessary for the welfare of the public at large as to the manner in which arms shall be borne. * * *" *State* v. *Nieto* (1920), 101 Ohio St. 409, 413.

Similarly, the court has upheld a municipal ordinance which required a person seeking to possess a handgun to obtain an identification card. In *Mosher* v. *Dayton* (1976), 48 Ohio St. 2d 243, at pages 247-248 [2 O.O.3d 412], the court commented:

"* * * This is a reasonable police regulation which finds ample justification in the public interest of keeping dangerous weapons out of the hands of convicted felons and others forbidden to own and carry them. * * * Reasonable gun control legislation is within the police power of a legislative body to enact; any such restriction imposes a restraint or burden upon the individual, but the interest of the governmental unit is, on balance, manifestly paramount. * * * [Citation omitted.]

"* * *

"* * * Neither federal nor state law states that the right of an individual to bear arms is supreme over the authority of a governmental unit under the police power to regulate the purchase of arms in a reasonable manner. * * *"

In the sole dissent in the *Mosher* case, Justice (now Chief Justice) Celebrezze, expressed the belief that the municipal ordinance was not necessary since R.C. 2923.13 pre-empted the area covered by the ordinance, but said that:

"It is my belief that the public interest in keeping dangerous weapons out of the hands of those suffering from 'disability'

is a matter of statewide concern * * *."
*Id.,* at page 250.

A similar federal statute, Section 922, Title 18, U.S. Code, prohibits certain persons from receiving, transporting, or shipping firearms. That statute includes within its classifications persons who are under indictment for a felony. In considering the constitutionality of that statute, federal circuit courts have upheld the statute. In *United States* v. *Craven* (C.A. 6, 1973), 478 F.2d 1329, 1339, certiorari denied (1973), 414 U.S. 866, rehearing denied (1973), 414 U.S. 1086, the court stated:

"* * * It was eminently reasonable for Congress to conclude that the indictment of an individual for a crime punishable by imprisonment for a term exceeding one year is so often indicative of a propensity for violence that the indictment classification of 18 U.S.C. § 922(h)(1) was justified in the public interest. * * *"

Similarly, in *United States* v. *Thoresen* (C.A. 9, 1970), 428 F.2d 654, 662, the court observed:

"* * * While the provision in question [predecessor to Section 922(g), Title 18, U.S. Code] does forbid indicted persons from transporting firearms in interstate commerce while the indictment is outstanding, the indictment serves only as a temporary block pending disposition of the criminal proceedings in which the indictment was filed. Bearing in mind that we are not dealing with statutory restrictions upon such constitutionally sensitive activities as free speech or the right to vote, we think Congress may, in pursuit of the sound objectives of the legislation, require indicted persons to tolerate this temporary limitation upon their right to transport weapons in interstate commerce."

We are of the opinion that it was within the bounds of the state's police powers to enact R.C. 2923.13(A)(2). The classification imposes a temporary limitation upon the right of one under indictment to acquire, have, carry or use a firearm. Should the temporary limitation work an undue hardship upon the indicted party, provision for relief from disability is made in R.C. 2923.14.

Likewise, this classification does not impose upon appellant's constitutionally protected presumption of innocence. While not expressly set out in the United States Constitution, there can be no argument that such a presumption accompanies every criminal defendant into a trial. See *Deutch* v. *United States* (1961), 367 U.S. 456, 471. The present classification does not authorize the jury to infer appellant's guilt on the present charge from the existence of prior indictments. Rather, it represents a valid determination by the legislature that one who is under indictment for a felony of violence should not acquire, have, carry or use a firearm unless and until the indictment is dismissed or an acquittal is obtained.

We expressly find that R.C. 2923.13(A)(2) is constitutional. However, we do find that under the circumstances of the case *sub judice,* when prior indictments, which serve as the basis for the charge of "having weapons while under disability" under R.C. 2923.13(A)(2), are resolved in favor of the defendant prior to the trial on the disability-based charge, the prior indictments are then rendered unusable in the subsequent trial on the disability charge. Any disability which flowed from the prior (earlier) indictments, upon resolution of those indictments in favor of the accused, must be said to have dissolved *ab initio* and be held for naught as relates to the disability-based charge.

We are unable to find any Ohio reported cases which deal with this specific issue. However, an analogous case from the First Appellate District of Ohio is *State* v. *Leggett* (May 3, 1978), Hamilton App. No. C-77356, unreported. In that case, the defendant was charged with having weapons while under disability. The alleged disability was a conviction under former R.C. 3719.43, which was

repealed subsequent to Leggett's conviction. Am. Sub. H. B. No. 300, which repealed former R.C. 3719.43 (see 136 Ohio Laws, Part II, 2311, 2394), provided for vacating of sentences imposed under former R.C. 3719.43 and the expungement of all information concerning the offense since former R.C. 3719.43 had been repealed (see Section 3, Am. Sub. H. B. No. 300, 136 Ohio Laws, Part II, 2394-2395). However, at the time of his indictment for the weapons charge, Leggett had not had his record expunged. Subsequently, having had his record of conviction expunged, Leggett moved the trial court to strike the portions of the indictment which alleged a prior offense, but the trial court denied that motion. In reversing the trial court, the Court of Appeals for Hamilton County stated:

"The second count of the indictment — having a weapon while under a disability (R.C. 2923.13) — should be stricken. The disability alleged was the prior Franklin County conviction. When this conviction was expunged from the record appellant was no longer under a disability and this essential element of the second count of the indictment could no longer be proved. Again we do not deem controlling the fact that at the time of the indictment the conviction had not been expunged. * * *"

The Ohio Supreme Court has recently held that trial courts have authority to order "* * * expungement and sealing of records in a criminal case where the charges are dismissed with prejudice prior to trial by the party initiating the proceedings." *Pepper Pike* v. *Doe* (1981), 66 Ohio St. 2d 374 [20 O.O.3d 334], paragraph one of the syllabus. However, the court strictly limited the circumstances under which the expungement may be ordered. The decision was directed toward the inequity that results from application of R.C. 2953.32, which addresses expungement of the criminal record of convicted first offenders, but fails to address those who are charged but not convicted.

By application of the reasoning in the above-cited cases to the case *sub judice,* we find that the indictments, upon dismissal of the charges, or upon acquittal, were no longer available to serve as the basis of disability. For this reason, appellant's first assignment of error is well taken.

Appellant's second assignment of error is:

"The trial court erred to the substantial prejudice of the Defendant-Appellant in overruling the Defendant's motion to dismiss the case prior to trial based upon the lack of allegation in the indictment that the Defendant had actual notice or knowledge of his alleged disability, and, after the State's opening statement, in refusing to give Defendant's requested instruction #3, and in overruling Defendant's objections to instructions on the issue of notice of disability."

R.C. 2923.13 does not expressly require notice or knowledge of disability as an essential element of the offense charged thereunder. The statute merely requires that the person charged "knowingly" do any of the prohibited acts. The thrust of appellant's argument is that he, a member of one of the classes prohibited from either acquiring, having, carrying or using a firearm, had no notice that such would be a prohibited act or that he would fall within one of the classes of persons under disability. Appellant argues that absent such notice, an essential element of the state's burden is left to be presumed by the trier of the fact, which violates due process. We agree.

Appellant's contention in effect is that under these circumstances his ignorance of the law should be a defense to the criminal prosecution.

In *Lambert* v. *California* (1957), 355 U.S. 225, the court held that a municipal ordinance, which imposed a criminal sanction for failure of a convicted person to remain in Los Angeles without registering, violated the Due Process Clause, as applied to the defendant. The court held that:

"* * * Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. * * *". *Id.,* at pages 229-230.

The court used a balancing test between the benefit of the statute and the burden imposed on the potential defendant, observing:

"* * * Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. * * * [T]he principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case. [Citations omitted.]" *Id.,* at page 228.

In the case *sub judice,* appellant contends that someone was after him and that he had the weapon for self-defense. This affirmative defense would have been available to him but for his outstanding indictments. The handgun he possessed was in open sight, not concealed. Appellant did not attempt to hide or conceal the pistol in any manner when approached by the police officer. These circumstances speak to the issue of appellant's knowledge of any wrongdoing.

The registration ordinance in *Lambert, supra,* was labeled as a "* * * law enforcement technique designed for the convenience of law enforcement agencies * * *." *Id.,* at page 229. The benefit of the ordinance was slight in terms of the overall protection of public safety. On the other hand, the burden imposed on the convicted felons was great. Every "convicted person" who stayed in Los Angeles for more than five days was required to register with the police. In what manner was any member of that class to be aware of the requirement of the law? Therefore, the court found that it was a denial of due process to presume that a defendant had notice of the requirement.

We find that, in order to obtain a conviction under R.C. 2923.13(A)(2), when the disability stems *solely from prior indictment* for a felony of violence, the state must prove that the defendant had been given notice of his status as a member of a restricted class under R.C. 2923.13. The burden is not great, as the arraigning judge could easily incorporate such notice into his general instructions at the time of arraignment. Likewise, such notice could accompany the service of the indictment itself.

Without such a requirement, it would be possible for an indictment to be outstanding against an individual without his knowledge. Thus, before even being served with the indictment, such person would already be under disability and subject to the penalties of R.C. 2923.13. Accordingly, appellant's second assignment of error is well taken.

Appellant's third assignment of error is:

"The trial court erred to the substantial prejudice of the Defendant-Appellant in granting the State's motion in Limine as it pertained to the Defendant's proffer of evidence of acquittal of the prior disabling charges."

In view of our disposition of appellant's first assignment of error, we find that it follows that this assignment is also well taken.

Appellant's fourth assignment of error is:

"The trial court erred to the substantial prejudice of the Defendant-Appellant in granting the State's motion in Limine thereby prohibiting the Defendant from offering proof of the affirmative defense available under R.C. 2923.12(C) and in refusing to give Defendant's requested instruction #1 pertaining to the affirmative defense * * *."

R.C. 2923.12(C) specifically states that:

"It is an affirmative defense to a charge under *this section* of carrying or having control of a weapon * * *." (Emphasis added.)

By its language, the section makes it clear that it applies to R.C. 2923.12 only,

and is not available as a defense to a charge under R.C. 2923.13(A)(2). We so hold. Therefore, it was not error for the trial court to refuse such instruction; and, appellant's fourth assignment of error is overruled.

Appellant's fifth assignment of error is:

"The trial court erred to the substantial prejudice of the Defendant-Appellant in admitting the State's exhibits #1 and #2 where the chain of custody had not been properly established * * *."

According to the record, State's Exhibit No. 1 was marked, identified and authenticated by Patrolman Elton Newton of the Milford Police Department, as being a .357 magnum, six-shot weapon taken from appellant's vehicle on July 8, 1979. State's Exhibit No. 2 was likewise marked, identified and authenticated by Patrolman Newton as being six bullets taken from State's Exhibit No. 1. Patrolman Newton marked each item with his initials. He then took them to the Milford Police Station and placed them in the evidence room. Patrolman Newton personally removed them and brought them to the courthouse for introduction at trial.

The admission of these items into evidence was within the sound discretion of the trial court. From a review of Patrolman Newton's testimony, we cannot agree with appellant's assertion that the trial court abused its discretion. Therefore, appellant's fifth assignment of error is overruled.

Appellant's sixth assignment of error is:

"The trial court erred to the substantial prejudice of the Defendant-Appellant in overruling the Defendant's motion to strike the testimony of Deputy Cooper and for mistrial made at the conclusion of the direct examination of said witness * * *."

Deputy Tom J. Cooper of the Clermont County Sheriff's Office testified that he served two indictments and two summonses on appellant in May 1979, certified copies of which were identified as State's Exhibits Nos. 3, 4, 5 and 6. Deputy Cooper testified he knew appellant personally. He further testified that he personally handed the indictments and summonses to appellant at the Clermont County Sheriff's Office. Before admitting these items, the trial court denuded all the written portions that referred to the offenses for which appellant was under indictment, leaving only sufficient information to demonstrate that appellant was under indictment.

Appellant presents no authority which demonstrates that it was prejudicial error to admit the testimony of Deputy Cooper of the service of the prior indictments on appellant. The state obviously had no better means to establish what was an essential element of the charge under R.C. 2923.13(A)(2), that is, that appellant was under indictment for a felony of violence at the time he was arrested in possession of a firearm.

Therefore, appellant's sixth assignment of error is overruled.

Appellant's seventh assignment of error is:

"The trial court erred to the substantial prejudice of the Defendant-Appellant in admitting State's exhibits #3, #4, #5 and #6 over defense objection * * *."

In view of our holding on the first assignment of error, we find that subsequent to the dismissal of one charge (aggravated robbery) and acquittal on the other charge (felonious assault), the certified copies of the prior indictments should not have been admitted by the trial court.

Thus, appellant's seventh assignment of error is well taken.

Appellant's eighth assignment of error is:

"The trial court erred to the substantial prejudice of the Defendant-Appellant in overruling the Defendant's motion for acquittal made pursuant to Crim. R. 29 at the end of the State's case, * * * at the

end of all of the evidence, * * * and renewed within fourteen days of verdict * * *."

One theory upon which appellant's motion for acquittal was made was that appellant had no notice of his disability status under R.C. 2923.13. To this extent, on the basis of our decision requiring such notice to be given (under the second assignment of error), we find this eighth assignment of error to be well taken.

Appellant's ninth assignment of error is:

"The trial court erred to the substantial prejudice of the Defendant-Appellant in failing to strike from the record all statements alleged to have been made by the accused as to ownership and/or possession of the State's exhibit #1 when the discovery provided by the State and the prior sworn testimony of the arresting officer unequivocally negated the existence of the statements of the accused * * *."

Officer Newton was the arresting officer. His testimony clearly set forth that appellant was in possession of the .357 handgun, completely apart from any statement allegedly made by appellant. The officer did testify, to the apparent surprise of both prosecution and defense, that the appellant had made a brief statement:

" Uh * * * the only statement that he made that I can remember, is one he made about the gun, in reference to why he was carrying it, he stated, you know, that he has some people after him, and that's why he was carrying the gun."

The trial court struck any reference in the statement to ownership of the gun. Further, the court instructed the jury to disregard this statement as it pertained to ownership because the state failed to pro-vide this on discovery. Counsel for appellant then agreed with the court and did not object to this instruction of the court.

There was overwhelming evidence of appellant's possession of the gun quite apart from this statement. Any inference as to possession, if the jury could have so distinguished it from ownership, was in no way prejudicial to appellant. Accordingly, this assignment of error is overruled.

The appellant's last assignment of error is:

"The verdict of the jury is contrary to the manifest weight of the evidence."

Because we hold that appellant had no notice of his disability, we agree that the state's evidence failed to establish all the essential elements of the offense of "Having Weapons Under Disability." Accordingly, appellant's tenth assignment of error is well taken.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court for the reasons set forth in the rulings upon appellant's first, second, third, seventh, eighth, and tenth assignments of error, that the judgment or final order herein appealed from be, and the same is hereby reversed and the appellant is discharged.

*Judgment reversed and defendant discharged.*

HENDRICKSON, P.J., KOEHLER and ZIEGEL, JJ., concur.

ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.